UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SHIRLEY PIERCE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Cause No. 1:17-cv-2036-WTL-DLP |
| | ) |
| NANCY A. BERRYHILL, Deputy | ) |
| Commissioner for Operations, Social Security | ) |
| Administration,[1] | ) |
| | ) |
| Defendant. | ) |

# ENTRY ON JUDICIAL REVIEW

Plaintiff Shirley Pierce requests judicial review of the final decision of Defendant Nancy A. Berryhill, Deputy Commissioner for Operations of the Social Security Administration ("Deputy Commissioner"), denying her application for Disability Insurance Benefits ("DIB"). The Court rules as follows.

## I. PROCEDURAL HISTORY

Pierce protectively filed her application on April 28, 2014, alleging onset of disability on April 1, 2013. The Social Security Administration ("SSA") initially denied Pierce's application on July 8, 2014. After Pierce timely requested reconsideration, SSA again denied her claim on September 30, 2014. Thereafter, Pierce requested a hearing before an Administrative Law Judge

---

[1] It has come to the Court's attention that on March 6, 2018, the General Counsel of the U.S. Government Accountability Office (GAO) notified the President that effective November 17, 2017, Nancy A. Berryhill could no longer serve as the "Acting Commissioner" of the Social Security Administration pursuant to the Federal Vacancies Reform Act of 1998, Pub.L.No. 105-277, Div. C, Title I, 112 Stat. 2681-611 (Oct. 21, 1998), as amended, 5 U.S.C. §§ 3345-3349d. GAO, https://www.gao.gov/products/D18772#mt=e-report (last visited Apr. 27, 2018). The caption has been updated to reflect Ms. Berryhill's current official title.

("ALJ"). An ALJ held a hearing on May 5, 2016, at which Pierce, two medical experts, John A. Pella, M.D., and Don A. Olive, Ph.D., as well as a vocational expert ("VE") testified. The ALJ issued his decision denying Pierce's application on June 30, 2016. After the Appeals Council denied Pierce's request for review on May 5, 2017, Pierce filed this action seeking judicial review on June 15, 2017.

## II. EVIDENCE OF RECORD

The relevant evidence of record is amply set forth in the parties' briefs and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

## III. APPLICABLE STANDARD

Disability is defined as "the inability to engage in any substantial gainful activity by reason of a medically determinable mental or physical impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A). In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity she is not disabled, despite her medical condition and other factors. 20 C.F.R. § 404.1520(b).

At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits her ability to perform basic work activities), she is not disabled. 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets

2

the twelve-month durational requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(d). At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. § 404.1520(f). At step five, if the claimant can perform any other work in the national economy, she is not disabled. 20 C.F.R. § 404.1520(g).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id.*, and this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). In order to be affirmed, the ALJ must articulate his analysis of the evidence in his decision; while he "is not required to address every piece of evidence or testimony presented," he must "provide an accurate and logical bridge between the evidence and [his] conclusion that a claimant is not disabled." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012). "If a decision lacks evidentiary support or is so poorly articulated as to prevent meaningful review, a remand is required." *Id.* (citation omitted).

## IV. **THE ALJ'S DECISION**

The ALJ found at step one that Pierce had not engaged in substantial gainful activity since the alleged onset date. At step two, the ALJ determined that Pierce had the severe impairments of cervical spondylosis, lumbar degenerative disc disease, left shoulder pain, history of left knee pain, sacroiliac and hip pain, and obesity. The ALJ found at step three that these impairments did not, individually or in combination, meet or equal the severity of one of the listed impairments. The ALJ's residual functional capacity ("RFC") determination was as follows:

> After consideration of the entire record, the Administrative Law Judge finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she can lift and carry up to 10 pounds occasionally; sit for two hours at one time, and for a total of six hours per eight-hour workday with a sit-stand option for five minutes each hour; stand two to three hours in an eight-hour workday; walk two to three hours in an eight-hour workday; occasionally reach overhead; occasionally push and pull; frequently reach forward; frequently use the lower extremities; climb stairs with a handrail; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, and kneel; never couch or crawl; never be exposed to unprotected heights; occasional exposure to moving mechanical parts; but there should be no commercial driving or exposure to extremes of heat or cold.

R. at 22-23. The ALJ concluded at step four that Pierce was incapable of performing her past relevant work as a maintenance mechanic. At step five, the ALJ found, based on VE testimony, that considering Pierce's age, education, work experience, and RFC, that there are jobs that exist in significant numbers in the national economy that she could perform, including as a clerk cashier, an addressing clerk, and a document clerk. Accordingly, the ALJ concluded that Pierce was not disabled.

## V. **DISCUSSION**

Pierce argues that the ALJ erroneously failed to include reduced cervical range of motion or any limitation in neck motion in his RFC assessment. Pierce identifies objective findings from a consultative examination performed by Wallace J. Gasiewicz, M.D., on December 28, 2015, revealing "poor range of motion in [the] cervical" spine, R. at 542, with significantly reduced flexion, extension, lateral movement to both sides, and bilateral rotation, R. at 540. Pierce argues further that the ALJ failed to provide a good explanation for rejecting the examining source's opinion as required by Social Security Ruling ("SSR") 96-8p and include any limitation in Pierce's ability to look up, down, right, and left in the RFC.

With regard to medical opinions, SSR 96-8 does require that the "RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."

4

SSR 96-8p (S.S.A. July 2, 1996), 1996 WL 374184 at *7.  However, Dr. Gasiewicz's examination findings are objective observations, which more than likely do not meet the regulatory definition of a medical opinion.  "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1).  Dr. Gasiewicz did not interpret the significance of his observations, by offering corresponding work-related restrictions in vocationally relevant terms.

Even assuming *arguendo* that the observations qualified as a medical opinion, it is not apparent that the findings conflict with the ALJ's RFC finding necessary to trigger a duty of the ALJ to explain why they were rejected.  The ALJ credited that Pierce's cervical spondylosis was a severe impairment and assessed a fairly restrictive RFC for a reduced range of sedentary work that included limited exposure to work-place hazards and no commercial driving.  The question is not whether Pierce has limitations related to her neck impairment, but whether those limitations are more severe that what the RFC allows.  The Seventh Circuit has noted that when a medical source's "findings are equivocal and therefore not particularly supportive of either side in this controversy," and the medical source has "failed to venture an opinion as to the extent of [the claimant's] limitations or as to his residual capabilities, the evidentiary usefulness of his findings is slight, at best." *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

While Pierce argues in her reply that the objective findings are themselves limitations or proxies for functional limitations, similar to objective findings showing the amputation of an upper extremity precluding any use of that extremity for job tasks or a complete lack of forward flexion of the lumbar spine precluding the ability to stoop, the Court does not find the analogies availing.  Even a severely limited range of motion in the cervical spine does not necessarily

5

correlate with an inability to perform the necessary functions of sedentary work, including an ability to look in any direction. Even without being able to turn one's head, an individual has the ability to move their eyes, turn their body, or in sit-down work swivel their chair to perform whatever functions are required based on their ability to look in a particular direction. While these alternative methods of looking in a particular direction might preclude dangerous work or driving, the RFC limits that kind of work. The jobs that the ALJ ultimately found Pierce capable of are sedentary clerk jobs that are not obviously inconsistent with a limited ability to move one's head.

Moreover, Pierce's argument appears to conflict with Seventh Circuit precedent. In *Pepper*, the claimant presented significant evidence demonstrating reduced range of motion in the cervical spine and corresponding complaints of neck pain. *Pepper v. Colvin*, 712 F.3d 351, 355-56 (7th Cir. 2013). The Circuit held in the context of the ALJ assessing an RFC for an even more rigorous range of light work that did not specifically include any limitation with neck movement that to "the extent Pepper argues that the decreased range of motion in her neck and her ability to sit for only a short period of time are inconsistent with the ALJ's RFC assessment, this argument is unconvincing." *Id*. at 362-63. The Circuit found it relevant that no medical source had offered an opinion that explicitly prevented the claimant from performing the central tasks of light work. *Id.* at 363. The Circuit also did not address any "opinions" of the examiners themselves who merely observed the claimant's reduced range of motion. *Id*.

Furthermore, the Court finds that the ALJ's RFC assessment was supported by substantial evidence. The ALJ reviewed Dr. Gasiewicz's examination findings in detail, including the specific degree of limited range of motion in the cervical spine. R. at 26. More importantly, the ALJ gave great weight to the opinion of one of the medical experts, Dr. Pella, based on his review of the entire medical record. R. at 28. Dr. Pella assessed functional

limitations consistent with the ALJ's eventual RFC finding. R. at 42. Dr. Pella was asked, "is there any particular exhibits that stood out as far as defining the Claimant's situation for you?" R. at 43. Dr. Pella specifically referenced "a CE exam in 18F," referring to Dr. Gasiewicz's examination. R. at 43. This is not a case where the ALJ was relying on his own lay interpretation of the significance of the objective findings, such that the ALJ could be impermissibly "playing doctor." *See Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014). Here, the ALJ was relying on Dr. Pella's expert interpretation of the examination findings of Dr. Gasiewicz. Dr. Pella's interpretation, without any explicitly conflicting opinion to rebut it, provides substantial support for the ALJ's RFC finding.

## VI. **CONCLUSION**

For the reasons set forth above, the decision of the Deputy Commissioner is **AFFIRMED**.

SO ORDERED: 7/12/18

*William T Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication